UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JENNIFER R.,

                        Plaintiff,

v.                                                        CASE # 21-cv-06177

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | JUSTIN GOLDSTEIN, ESQ.<br>KENNETH R. HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | JOSHUA J. KERSHNER, ESQ.<br>KATHRYN L. SMITH, ESQ.<br>SIXTINA FERNANDEZ, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is **GRANTED**, defendant's motion is **DENIED,** the decision of the

Commissioner is **REVERSED**, and this matter is **REMANDED** for further administrative proceedings consistent with this order.

I.      RELEVANT BACKGROUND

   A.     Factual Background

Plaintiff was born on October 6, 1978 and has at least a high school education. (Tr. 151, 145). Generally, plaintiff's alleged disability consists of degenerative disc disease (DDD), spinal stenosis, spondylosis with radiculopathy status post spinal surgery of laminectomy, facetectomy, and foraminotomy bilateral with decompression at L3-L5 on June 21, 2018 with sacroiliitis and post laminectomy syndrome. (Tr. 121, 144, 153-59, 167, 171, 188). Her alleged onset date of disability is January 17, 2018 and her date last insured is December 31, 2023. (Tr. 133).

   B.     Procedural History

On August 3, 2018, plaintiff protectively applied for Disability Insurance benefits under Title II of the Social Security Act. (Tr. 123). On March 29, 2019, plaintiff protectively applied for Supplemental Security Income benefits under Title XVI. (Tr. 137). Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge (ALJ). On May 28, 2020, plaintiff appeared before ALJ Christine Cutter. (Tr. 28-54). On June 8, 2020, ALJ Cutter issued an unfavorable decision finding plaintiff not disabled under the Social Security Act. (Tr. 12-23). On January 13, 2021, the Appeals Council (AC) denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Thereafter, plaintiff timely sought judicial review in this Court.

   C.     The ALJ's Decision

Generally, in her decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since January 17, 2018, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairment: spine disorders. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except in eight hours can occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; never work with tools or on surfaces that vibrate; never work at unprotected heights; must be able to change positions (sit to stand and vice versa) to the opposite every hour for 3 to 5 minutes, but does not need to be off task or leave the work station to do so.

6. The claimant is capable of performing past relevant work as a Medical Secretary and Teacher's Assistant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act from January 17, 2018, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 12-23).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff argues the ALJ's residual functional capacity finding is unsupported by substantial evidence. (Dkt. No. 8 [Plaintiff's Mem. Of Law]). Specifically, plaintiff argues the ALJ improperly considered opinion evidence, misstated/oversimplified the evidence of record, and crafted a RFC that was not supported by substantial evidence.

B.     **Defendant's Arguments**

In response, defendant broadly argues the RFC is supported by substantial evidence and addresses plaintiff's remaining arguments. (Dkt. No. 10 [Defendant's Mem. of Law]).

III.    **RELEVANT LEGAL STANDARD**

A.     **Standard of Review**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.   Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

IV. ANALYSIS

   A.   **Highly Specific RFC**

Plaintiff argues that the ALJ's highly specific RFC was not supported by substantial evidence. (Dkt. No. 8). An ALJ must conduct a distinct analysis that would permit adequate review on appeal, and each of the ALJ's conclusions must be supported by relevant medical evidence. *Aung Winn v. Colvin*, 541 Fed. Appx. 67, 70 (2d Cir. 2013). This is especially true in highly specific RFC assessments, where an ALJ determines the specific amount of time a claimant can spend on certain activities. *Heckman v. Comm'r of Soc. Sec.*, No. 18-CV-6032, 2019 WL 1492868, at *3 (W.D.N.Y. Apr. 4, 2019) (remanding where ALJ made highly specific finding that plaintiff could stand for one to two minutes after standing 60 minutes). When an ALJ does not connect the evidence of record and RFC findings, or otherwise explain how the record evidence supported her RFC findings, the decision leaves the court with unanswered questions and does not afford an adequate basis for meaningful judicial review." *Gorny v. Comm'r of Soc, Sec.*, 2018 WL 5489573, at *4 (W.D.N.Y. Oct. 29, 2018).

Here, the ALJ included in the RFC the limitation that plaintiff must be able to change positions (sit to stand and vice versa) to the opposite every hour for 3 to 5 minutes but does not need to be off task or leave the workstation to do so. (Tr. 19). No opinion in the record included that positional time limitation, but rather evidence of record contradicted the finding. The ALJ did not cite any evidence to connect the highly specific 3 to 5 minute sit stand limitation to the record. The ALJ only identifies the opinion from treating pain specialist Dr. Patel which states the plaintiff needs to be able to change positions at will from seated to standing. (Tr. 21). However, the ALJ explains she was not relying on the opinion because it was on an issue reserved to the commissioner and because Dr. Patel opined a functional examination was

required to make additional specific limitations. (*Id*.). Despite this explanation, the ALJ concludes she has added the change in position requirement because she viewed the evidence in the light most favorable to the claimant. (*Id*.). Dr. Patel's opinion however was more restrictive than the RFC and the ALJ did not address the conflict. This was error.

A very specific RFC assessment, such as the specific amount of time a claimant can spend on certain activities, must be based on evidence in the record and not on the ALJ's own surmise. *Cosnyka v. Colvin*, 576 Fed.App'x. 43, 46 (2d Cir. 2014) (summary order). Without some explanation from the ALJ as to the tether between her RFC and the medical opinions or statements from plaintiff, the RFC is based upon her lay analysis of plaintiff's limitations, which is not permitted and requires remand. *Jordan v. Berryhill*, 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018).

Defendant correctly reiterates that an RFC does not need to mirror a medical opinion but rather must consider the record as a whole. *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022)(quoting *Matta v. Astrue,* 508 F. App'x 53, 56 (2d Cir. 2013)). Additionally, if a record contains at least some evidence of a specific limitation, the ALJ may appropriately reach a specific RFC incorporating that limitation. *See, e.g.*, *Bryant v. Berryhill*, 2017 WL 2334890, at *4 (W.D.N.Y. May 30, 2017) (holding that "several refences in the record," including the claimant's conflicting reports about the length of time he could sit or stand—some indicating 10 to 15 minutes at a time and others indicating 30 minutes at a time—allowed the ALJ to "reasonably conclude[] that [claimant] could sit for 30 minutes and stand for 15 minutes"). But that is not the case here.

Defendant contends the ALJ did not rely on her lay opinion but considered the evidence as a whole. Significantly, defendant does not cite any additional evidence supporting limitations

7

that were highly specific and still less restrictive than the opinion from plaintiff's doctor, but only offers ad hoc rationalizations to expand the ALJ's analysis beyond what is present in the decision. (Dkt. No. 10 at 15). Defendant sidesteps plaintiff's arguments and asserts the ALJ was allowed to resolve conflicts in the evidence, citing a different medical opinion that plaintiff could do nearly the full range of light work. (Dkt. No. 10 at 15). Indeed, in November 2018, non-examining State agency medical consultant, Dr. Putcha, opined plaintiff could perform nearly a full range of light work but only as of a year after the onset date of January 16, 2019. (Tr. 59). Dr. Putcha's opinion pertained to plaintiff's functioning in the future and was later contradicted by treatment records, which the ALJ failed to address when considering the consistency of the opinion. (Tr. 24). For instance, on January 22, 2019, plaintiff was examined by Dr. McMorrow who instructed her use a rolling walker for easier ambulation and to prevent falls/injury. Examination revealed slow and antalgic gait with limited testing due to pain that was unchanged since surgery. (Tr. 781-82). In July 2019, she was diagnosed with failed low back surgery syndrome with continued leg and back pain. (Tr. 811). Medial branch block injections in October 2019 resulted in improvement but numbness and tingling returned a week later. (Tr. 885). In sum, Dr. Putcha's opinion was mere speculation of improvement in the future, and there was not substantial evidence conflicting the sit/stand at will opinion from Dr. Patel. ALJ Cutter failed to address why that more favorable, and more restrictive limitation, was not included in the RFC.

Evidence of record, either ignored or omitted by the ALJ, supports Dr. Patel's opinion and differs from the ALJ's conclusion that surgery improved plaintiff's impairments. As an initial matter, the ALJ summarily described plaintiff's multiple severe impairments as "spine disorders" but the record reflects diagnoses of spondylosis without myelopathy or radiculopathy; lumbar degenerative disc disease, status post-surgery with a component of failed back syndrome;

and disruption of external operation (surgical) wound. (Tr. 782, 878). The ALJ cites improvement and conservative treatment, including the plaintiff's rejection of a cord stimulator implant. (Tr. 20). Plaintiff required the care of a pain specialist beginning in March 2019, for unchanged lower back and right leg pain, despite injections and prescribed Duloxetine. (Tr. 801-02, 880-82).

Notably, plaintiff met an acceptable good cause for failing to pursue the spinal cord stimulator surgery. The Rulings identify a good cause for not following prescribed treatment as, "The individual previously had major surgery for the same impairment with unsuccessful results and the same or similar additional major surgery is now prescribed." *See* SSR 18-3p. Dr. Boev assessed failed back syndrome, and Dr. Patel assessed post-laminectomy syndrome. (Tr. 878, 881). Nurse Practitioner Goodliff further indicated that plaintiff's pain did not improve with surgery. (Tr. 863). As cited by plaintiff, "'Spinal cord stimulation is a surgical technique in which an electrode is placed next to the spinal cord. [A] mild electric current' is used to block nerve impulses in the spine, which may reduce pain in some patients. This technique may be used to treat chronic back pain and is used after other treatments such as medicines and exercise ... have not worked." *Karin C. v. Comm'r of Soc. Sec.*, 2021 WL 4066501, at *1 (N.D.N.Y. Sept. 7, 2021) (*quoting Camacho v. Colvin,* 2017 WL 770613, at *9 (S.D.N.Y. Feb. 27, 2017) (alterations added by court). Plaintiff appropriately underwent the psychiatric consultation for the cord stimulator, watch a video, and read literature before informing her doctor that she did not want to pursue that course of treatment. (Tr. 867-73, 883). Thus, the ALJ's conclusory reasoning was contradicted by the substance of the records.

Plaintiff does not argue the RFC limitations must mirror a medical opinion but that they must be based on substantial evidence and tethered to the record. The highly specific limitations

must come from medical evidence or opinions in the record. There is no way for this Court to engage in any meaningful review of the RFC in this case, as there is no way to determine how the ALJ arrived at the specific RFC finding and what she based it on other than her own lay interpretation of evidence.

### B. Additional Arguments

Plaintiff has alleged other errors. The Court declines to fully review the additional arguments submitted by plaintiff as remand has already been determined necessary.

**ACCORDINGLY, it is**

**ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is **GRANTED**; and it is further

**ORDERED** that defendant's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: April 14, 2023                                    *J. Gregory Wehrman*

Rochester, New York                                      HON. J. Gregory Wehrman
                                                         United States Magistrate Judge